UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AZFAL KHAN,<br><br>Defendant. | Crim. No. 2:15-334 (WJM)<br><br>OPINION |

### WILLIAM J. MARTINI, U.S.D.J.

Pursuant to the Mandatory Victims Restitution Act (MVRA), the Government requests restitution for losses, including attorneys' fees and related expenses, incurred by approximately 50 of Defendant Afzal Khan ("Khan" or "Defendant") and Emporio Motor Group LLC ("EMG")'s fraud victims.

### I. BACKGROUND

Khan was the owner and president of EMG, a car dealership in New Jersey that purchased and sold high-end and other vehicles. Through EMG, Khan defrauded both individuals and entities. On August 19, 2020, Khan pleaded guilty to committing wire fraud in violation of 18 U.S.C. § 1343. Defendant was sentenced on September 7, 2022 to a 24 month term of imprisonment and three years of supervised release. The Court held a restitution hearing on April 19, 2023. ECF No. 93.

### II. DISCUSSION

As a threshold matter, Defendant seeks to have his forfeiture amount of $1,072,919.98 used to pay the fraud victims. As support, Khan highlights that the Government agreed to recommend to the Attorney General that any forfeited amount be remitted or restored to eligible victims. However, the decision on the allocation of forfeiture is determined by the Department of Justice. Moreover, forfeiture and restitution serve different purposes and despite at times being identical, have been upheld as nonredundant and not a "double-penalty." *See e.g., U.S. v. Navarette*, 667 F.3d 886, 888 (7th Cir. 2012) (restitution and forfeiture are cumulative, and are "a form of punitive damages piled on top of the other penalties for the defendant's crime"); *U.S. v. Newman*, 659 F.3d 1235, 1241-43 (9th Cir. 2011) ("the district court may not reduce forfeiture because of an order of restitution to a victim or because the victim has already

been made whole"); *U.S. v. Pescatore*, 637 F.3d 128, 137 (2d Cir. 2011) (holding defendant was not entitled to have Government apply $ 2.5 million in forfeited funds to $3 million restitution order). Khan's request that forfeiture count as restitution is denied.

### A. Burden

Regarding amounts in dispute, the Government has the burden of proving loss by a preponderance of the evidence. *U.S. v. Lopez*, 503 Fed. App'x 147, 149 (3d Cir. 2012). Once the Government makes a *prima facie* case regarding loss amount, the burden shifts to the defendant to "provide evidence that the Government's evidence is incomplete or inaccurate." *U.S. v. Opitz*, 704 Fed. App'x 66, 69 (3d Cir. 2017). To meet its burden, the Government submits Declaration of Victim Loss statements ("Victim Statements") and FBI reports of victim interviews ("FBI Reports" or "302s"). During the restitution hearing, the Court ruled that any victim statement signed by the victim "under penalty of perjury" was sufficient to establish a *prima facie* case of loss. Hearing Tr., 67:18-19. *See U.S. v. Lopez*, 503 Fed. App'x 147, 149-150 (3d Cir. 2012) ("victim impact statement can be sufficient to establish the amount of a loss." (citing *U.S. v. Rochester*, 898 F.2d 971, 982 (5th Cir.1990) (holding affidavit was sufficient factual basis for order of restitution)). The Court reserved decision on whether the 302s were reliable enough to satisfy the Government's initial burden. Hearing Tr., 74:1. With those rulings in mind, Khan was given the opportunity to submit briefing seeking to overcome any prima facie case. Khan was instructed to provide "credible evidence" and specific objections to each claim for restitution that he was objecting to rather than merely state general objections to hearsay evidence. *Id.* at 68:20-24; 72:14-18.

Here, except as to loss by financial institutions, *see* below II(C), and unless noted otherwise, *see* below II(D)(2), the 302s satisfy the Government's initial burden to establish *prima facie* evidence of the amount of loss. First, for the Government to satisfy its burden, "[a]ll that is required in the restitution context is a 'modicum of reliable evidence.'" *Lopez*, 503 F. App'x at 149 (citing *U.S. v. Salas–Fernandez*, 620 F.3d 45, 48 (1st Cir. 2010)). *See e.g., id.* (agreeing that Government had met its burden on restitution by presenting spreadsheet and unsworn letter stating approximate loss). Second, Khan has not made specific objections to victims' losses or submitted rebuttal evidence beyond those discussed below. *See id.* (citing *U.S. v. Smith*, 528 F.3d 423, 425 (5th Cir. 2008) (holding employee's interview statement of loss was sufficient where defendant "did not introduce any rebuttal evidence or elicit any live testimony at the sentencing hearing suggesting that the victim's calculation of the total loss was incorrect") and *U.S. v. Prochner*, 417 F.3d 54, 66 (1st Cir. 2005) ("In the absence of rebuttal evidence beyond defendant's self-serving words, we cannot say the court clearly erred in accepting the PSR's calculation of the restitution amount.")). Finally, the 302s were prepared by FBI agents. *See Lopez*, 503 F. App'x at 150 (noting no reason that unsworn letter "should be disallowed as the equivalent of a victim impact statement, especially since the author was subject to criminal liability" for any false statements in it).

## B. Attorneys' Fees

Section 3663A(b)(4) of the MVRA provides that victims may be reimbursed for "lost income and necessary child care, transportation, and other expenses incurred *during participation in the investigation or prosecution of the offense* or attendance at proceedings related to the offense." (emphasis added). The term "investigation" and "proceedings" do not include private investigations and civil or bankruptcy litigation and are "limited to government investigations and criminal proceedings." *Lagos v. U.S.*, 138 S. Ct. 1684, 1688 (2018). The MVRA does not cover the "costs of a private investigation that the victim chooses on its own to conduct." *Lagos*, 138 S. Ct. at 1690. Nor does any expense fall within the terms of the MVRA if incurred *before* the victim's participation in a government investigation began. *Id.* Additionally, to be recoverable, legal expenses must not be a consequential loss, but "sustained as a direct result of the conduct underlying the offense of conviction." *Gov't of Virgin Islands v. Davis*, 43 F.3d 41, 46 (3d Cir. 1994); *U.S. v. Dodd*, 978 F. Supp. 2d 404, 422 (M.D. Pa. 2013). The Government's evidence does not show that the victims' attorneys' fees and related expenses were incurred during participation in a government investigation or proceeding to fall within the terms of § 3663A(b)(4).

Alternatively, the Government contends attorneys' fees incurred by victims to recover damages or missing property (such as title) are recoverable under § 3663A(b)(1). That provision mandates restitution where the "offense result[ed] in damage to or loss or destruction of property of a victim of the offense" and does not contain any language requiring expenses to be related to a government investigation. *See U.S. v. Gammell*, 932 F.3d 1175, 1181 (8th Cir. 2019). In other jurisdictions, "in the context of § 3663A(b)(1) ..., the clear weight of authority has held that restitution does not encompass attorney's fees." *U.S. v. Corey*, 77 F. App'x 7, 11 (1st Cir. 2003) (footnotes omitted). In the Third Circuit, it is clear that § 3663A(b)(1) does not authorize consequential damages and is instead "limited to an amount pegged to the actual losses suffered by the victims of the defendant's criminal conduct, and based upon losses directly resulting from such conduct." *U.S. v. Quillen*, 335 F.3d 219, 222 (3d Cir. 2003) (internal quotes and citations omitted); *see e.g., Davis*, 43 F.3d at 46 (reversing decision to include legal fees as part of restitution and noting "expenses generated in order to recover (or protect) property are not part of the value of the property lost (or in jeopardy), and "too far removed from the underlying criminal conduct to form the basis of a restitution order.") Here, neither the Victim Statements nor the FBI Reports sufficiently establish that any legal fees sought *directly* resulted from Khan's fraud. The Government has not shown by a preponderance of the evidence that the legal fees are direct rather than unrecoverable consequential damages. In any case, the Government should not be permitted to circumvent the requirements of § 3663A(b)(4)[1] by obtaining legal costs through § 3663A(b)(1). Thus, the restitution amounts awarded below exclude all requests for attorneys' fees.

---

[1] Section 3663A(b)(4) is often the specific statutory authority for an award of attorneys' fees. *See e.g., Dodd*, 978 F.

3

### C. Financial Institutions

Khan does not dispute that financial institutions that have indemnified victims are entitled to restitution,[2] but does contend that the Government has not proven the financial institutions' loss amounts by a preponderance of the evidence. Indeed, the Government fails to meet its burden where its restitution claims are supported only by FBI Reports of what individual victims received from financial entities rather than Victim Statements from individuals or from the financial institutions themselves as to what their losses are.

### D. Specific Objections

#### 1. Victim Statements

Regarding the *prima facie* case of loss established through the sworn Victim Statements, Khan has raised specific objections only as follows:

*BN[3]: Although the Government initially sought $70,000 restitution, it now seeks $45,000 after BN testified during the restitution hearing that he had in fact been paid $25,000. Khan does not provide the Court with any specific objection or credible evidence to refute the $45,000.

FJ: The Government seeks $188,000 restitution. Khan never paid FJ for a 1997 Bentley that Khan sold for FJ. The Bentley was a company car that FJ claims his company bought for $188,000. However, there is no evidence as to when FJ's company bought the car or what the resale value of the then 17-year old Bentley was at the time Khan sold it sometime in 2014. Moreover, Khan has submitted evidence that FJ was paid about $40,000. Khan May 17, 2023 Ltr., Ex. C. To the extent that the Government has met its *prima facie* burden, Khan has sufficiently rebutted the Government's assertion of amount of loss. No restitution shall be awarded for FJ's car.

NH: The Government seeks restitution totaling $143,513.41 for NH and Allstate. In May 2014, NH placed his $135,000 Audi R8 for sale on consignment with Khan. Khan paid NH $10,000 and agreed to pay off a $40,000 loan balance on the Audi. Khan sold the Audi but never gave NH the sale proceeds. While NH also claims his Audi loan was never paid off, Defendant has refuted the Government's evidence that the $40,000 loan remains

---

Supp. 2d at 422.

[2] "If a victim has received compensation from insurance or any other source with respect to a loss, ... the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation." 18 U.S.C. § 3664(j)(1).

[3] Asterisk indicates victim testified at the restitution hearing.

4

outstanding. Khan provided a lien release letter from TD Bank regarding a 2010 Audi and a copy of a check to TD Bank for $38,000.[4] Khan May 17, 2023 Ltr., Ex. E, E-1. Khan also submitted documentation of an additional $10,500 payment to NH. Allstate Insurance eventually compensated NH for the theft in the amount of $95,000. Restitution is awarded to Allstate for $95,000.

For the reasons discussed above, NH is not awarded restitution of $18,513.41 for attorney's fees he paid to obtain insurance coverage. Also, NH has already recouped more than $135,000: 1) $95,000 from Allstate; 2) pay-off of the $40,000 loan; and 3) a total of $20,500 from Khan. Thus, no further restitution to NH is necessary to make NH whole.

AIG (AB/CB): The Government seeks $126,000. For AB's $201,102.30 loss, Khan_Rest_PSRVS_00129, AIG paid $100,000. Khan_Rest_PSRVC_00013-00016. The source of the remaining $26,000 restitution claim is unclear. Thus, restitution to AIG is awarded for $100,000.

### 2. FBI Reports

Regarding restitution claims that are based solely on the FBI Reports, Defendant has made specific objections or provided documents to rebut the Government's position only with respect to the following:

RF: The Government seeks $150,000. The FBI Report indicates a loss of $205,000 for the sale of a Ferrari to Khan and $100,000 in attorneys' fees. There is no indication that the attorneys' fees were incurred during participation in the investigation or prosecution of the offense pursuant to § 3663A(b)(4) or that such expenditure was "loss" directly related to Khan's fraud under § 3663A(b)(1). Therefore, restitution shall be for $50,000.

EC: The Government seeks $90,000. EC sold a 2010 Rolls Royce to Khan for $170,000, which included Khan's agreement to pay off an outstanding $100,000 loan on the car and a payment of $70,000 that EC used as down payments towards the purchase of a 2013 Rolls Royce Ghost from EMG for $240,000. EC financed the remaining $170,000 for the 2013 Ghost that he never received from EMG. *See* Khan_Rest_302_00031-32. There is sufficient indicia of reliability as to the $70,000 loss, but not regarding any loan amount that remains outstanding. In fact, the pay-off letter from Rolls Royce Motor Cars Financial Services[5] for the 2010 vehicle and the lien release for the 2013 Ghost, *see* Khan

---

[4] Around that same time as the Audi consignment, NH initiated financing paperwork with EMG for the purchase of a Porsche. However, NH changed his mind and bought a Porsche through a different car dealership. Nonetheless, Khan did not cancel the financing and instead took out a $130,000 loan from TD Bank in NH's name. TD Bank ultimately forgave the Porsche loan. Although the Government suggests that the $38,000 payment to TD Bank may have been for financing of the car NH elected not to purchase from Khan, that car was a Porsche while the lien release was for an Audi.

[5] The Government notes that the pay-off letter is from Rolls Royce Motor Cars Financial Services rather than BMW Financial.

May 17, 2023 Ltr., Ex. D, D-1, rebut the Government's evidence of loss on the loan. Restitution is awarded for $70,000.

KG: The Government seeks $60,000. KG agreed to sell a Bentley Flying Spur to EMG on consignment and provided Khan with the car's title. Khan claimed he sold the car for $100,000 but only paid KG $40,000. Khan_Rest_302_00056. Khan has failed to refute the FBI Report with any evidence apart from questioning why KG would have provided Khan title without full payment. Restitution is awarded for $60,000.

BM: The Government seeks $37,000. Defendant has submitted documentation that BM paid Khan $22,000 for the vehicle. *See* April 18, 2023 Ltr., Def. Ex. A. Restitution is awarded for $22,000.

IL: The Government seeks $184,000. Documents submitted by Khan indicate that EMG paid approximately $48,000 of the $200,000 owed to IL. *See* April 18, 2023 Ltr., Def. Ex. C. Restitution is awarded for the $152,000 balance.

### E. General Objections

As to the remainder of restitution claims for which Defendant has not made any specific objections or provided any credible evidence to overcome the *prima facie* case of loss established through the sworn Victim Statements or 302s, restitution should be awarded as set forth in the summary list below. For the reasons discussed above, restitution does not include attorneys' fees. Nor is restitution awarded to financial institutions that stand in the place of the victim where the Government offers only 302s from indemnified individuals.

### F. Restitution summary

1. AN: $76,500
2. Citizen Bank in shoes of AK: $0
3. AL (Progressive Ins.): $0
4. AK2: $145,000
5. BM: $22,000 (see above)
6. Allstate in shoes of BG: $0
7. BN*/LN: $70,000 (see above)
8. BC: $19,165.00; Erie Ins.: $109,000
9. CN: $69,000 + $3,771 = $72,771; Allstate: $0
10. NJ Manufacturers in shoes of CR: $64,921.25
11. DL: $6,400
12. DB*: $69,000
13. DW: $10,000; Liberty Mutual: $0
14. EC: $70,000, (see above)
15. GF: $10,000

16. IL: $152,000 (see above)
17. Traveler's Ins. Co. in shoes of JM: $0
18. JS: $93,482
19. JB: $69,900 (of which $55,000 is conceded, see #49)
20. Erie Ins. in shoes of KM: $0
21. KF: $0
22. KR: $29,000
23. KG: $60,000 (see above)
24. MM: $17,000
25. NA: $0
26. NH: $0; Allstate: $95,000 (see above)
27. NV: $0 (no information provided as to what portion of loan was paid off by NV rather than NJ Manufacturers); NJ Manufacturers: $0
28. Progressive in shoes of PL: $0
29. Chase in shoes of PC: $0
30. RB: $0
31. RC: $0; Nationwide: $0
32. RF: $50,000 (see above)
33. RK: $0
34. RU: $7,385
35. RJH: $76,000
36. SM: $70,000; All State: $0
37. Aston Martin of Summit: $70,000
38. WM: $11,000
39. YL: $75,000
40. MR: $17,761.77
41. LR: $182,399
42. FJ: $0 (see above)
43. AIG (AB/CB): $100,000 (see above)
44. AU: $0 (missing title but in possession of car)
45. SA: $15,500
46. Travelers Ins.: $0
47. MG: $713,618.75

**Concessions to Restitution**

48. TD Bank:    $867,919.98
49. JB:         see #19
50. JK:         $33,000
51. BK*:        $8,000

**TOTAL RESTITUTION: $3,558,723.75**

7

### III. CONCLUSION

For the foregoing reasons, the Government's request for restitution is **granted in part and denied in part** as set forth herein. An appropriate Order accompanies this Opinion.

Dated: June 12, 2023

WILLIAM J. MARTINI, U.S.D.J.